United States District Court
for the
Southern District of Florida

| | |
|---|---|
| National Trust Insurance Company, Plaintiff, <br><br> v. <br><br> Savoy Hotel Partners, LLC, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 23-20860-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

### Order Granting Motion to Dismiss

This matter is before the Court on the Plaintiff National Trust Insurance Company's ("National Trust") motion to dismiss the Defendant Savoy Hotel Partners, LLC's ("Savoy") amended counterclaim. (Mot., ECF No. 26.) Savoy has responded opposing National Trust's motion (ECF No. 28), and National Trust has replied (ECF No. 29). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** National Trust's motion to dismiss. (**Mot., ECF No. 26**.)

1. **Background**[1]

This matter arises from an insurance coverage dispute between National Trust, an insurance company, and Savoy, the assignee of all right, title, and interest under certain insurance policies issued by National Trust to Jorda Enterprises, Inc. ("Jorda").

Savoy owns and operates the Savoy Hotel located at 425-455 Ocean Drive, Miami Beach, Florida 33139. (Am. Countercl. ¶ 1, ECF No. 22.) In 2018, Savoy retained Jorda and others to oversee the repairs of damage that had been caused to one of the hotel's buildings by Hurricane Irma. (Ex. A to Settlement Agree. ¶ 2, ECF No. 1-3.) However, to make a long story short, as a result of the contractors' mismanagement, the project descended into chaos, with some parts of the hotel needing to remain closed for an indefinite period of time. (*Id.* ¶¶ 4–7.)

In May 2019, Savoy was sued by a third-party in Miami-Dade County, Florida in an action bearing Case No. 2019-014309-CA-01 (the "Underlying Action"), which also arose from the failed renovation project of the hotel

---

[1] Unless otherwise indicated, this background is based on the allegations in the amended counterclaim. For the purposes of evaluating National Trust's motion, the Court accepts Savoy's factual allegations as true and construes the allegations in the light most favorable to it per Federal Rule of Civil Procedure 12(b)(6).

following Hurricane Irma. (Compl. ¶ 7, ECF No. 1; Am. Countercl. ¶ 14, ECF No. 22.) In June 2019, Savoy filed a counterclaim in the Underlying Action against Jorda and others, wherein it asserted that Jorda was liable for substantial property damages arising out of the repair contract. (Am. Countercl. ¶ 15, ECF No. 22.) In January 2020, Savoy filed an amended counterclaim, which included, among others, breach of fiduciary duty, breach of contract, and breach of warranty claims against Jorda, and likewise sought damages arising out of Jorda's breaches and negligence. (*Id.* ¶¶ 17–18.)

The parties dispute when exactly National Trust learned of the Underlying Action. (*Compare* Compl. ¶¶ 11–12, ECF No. 1 *with* Am. Countercl. ¶¶ 16, 19, ECF No. 22.) However, as alleged in the amended counterclaim, after National Trust denied coverage in June 2021, Jorda and Savoy engaged in settlement discussions, and ultimately agreed to resolve their dispute. (Am. Countercl. ¶¶ 20–21, ECF No. 22.) Jorda's claim to coverage from National Trust was based on two commercial general liability policies and a commercial liability umbrella policy issued to it by National Trust. (*Id.* ¶¶ 6–10.)

Jorda and Savoy's settlement agreement was finalized in December 2021. (*Id.* ¶ 23.) Jorda agreed to accept liability for damages arising out of its negligence in the repair project and consented to a judgment against it in the amount of $17,583,540.10. (*Id.* ¶¶ 22, 24.) In addition to including a stipulation that the intention of Jorda and Savoy was to have a "valid, binding agreement that is not fraudulent or collusive in any way," the settlement agreement is supported by a list of undisputed fact purportedly representing the basis for the judgment. (*See* Settlement Agree., ECF No. 1-3.) In addition, and critically, as part of the agreement Jorda assigned to Savoy all Jorda's right, title, and interest in any cause of action it may have against National Trust and 100% of Jorda's interest in any damages or other amounts owed by National Trust. (Am. Countercl. ¶ 25, ECF No. 22.) A final consent judgment for $17,583,540.10 was entered against Jorda in the Underlying Action on April 14, 2022. (*Id.* ¶ 26.)

On March 3, 2023, National Trust initiated the instant action against Savoy, seeking declaratory relief to determine whether it owes coverage for the settlement agreement under the liability policies issued to Jorda. (Compl. ¶ 1, ECF No. 1.) On June 13, 2023, Savoy filed its amended counterclaim, similarly seeking declaratory judgment as to the coverage owed by National Trust for the final judgment entered against Jorda in the Underlying Action (Count One) and seeking damages for National Trust's breaches of its contractual duties to pay under the insurance policies issued to Jorda (Count Two). Both causes of action depend on the enforceability of the settlement agreement between Jorda and Savoy. (*See* Am. Countercl. ¶¶ 30, 32, 38, 40, 41, ECF No. 22.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Analysis

National Trust moves to dismiss the amended counterclaim, arguing that it fails to adequately allege the enforceability of the settlement agreement, also known as a *Coblentz* agreement; that Count One is redundant in light of the declaratory relief sought in National Trust's complaint; and that Count Two impermissibly seeks to recover an excess judgment in the form of bad faith damages. (*See* Mot, ECF No. 26.) Because, as discussed below, the Court finds National Trust's first argument fully dispositive of Savoy's amended counterclaim, it will not discuss National Trust's other two arguments for dismissal.

"When an insurance company wrongfully refuses to defend its insured, Florida law lets the insured settle the case himself in exchange for the plaintiff's promise to collect the settlement only from the insurance company." *Travelers Indem. Co. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1260 (11th Cir. 2021). Such agreements are known as *Coblentz* agreements, after the 1969 Fifth Circuit decision that first approved one. *See Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969). The enforceability of a *Coblentz* agreement depends on whether a plaintiff can show that (1) there was coverage under the policies at issue, (2) the insurance company wrongfully refused to defend, and (3) the settlement amount was both "reasonable" and made in "good faith." *See Travelers Indem. Co.*, 10 F.4th at 1260. "The dual good faith and reasonableness requirements are imposed out of the 'real concern in this type of case' that 'the settlement between the claimant and the insured may not

actually represent an arm's length determination of the worth of the plaintiff's claim.'" *See Jimenez v. Gov't Emples. Ins. Co.*, 651 F. App'x 850, 853 (11th Cir. 2016) (quoting *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d D.C.A. 1984)). National Trust argues that Savoy's amended counterclaim fails to state a cause of action because it fails to adequately plead that the agreement at issue here was either reasonable in amount or negotiated in good faith. The Court agrees.

Perhaps unsurprisingly, in its response opposing National Trust's motion to dismiss, Savoy argues that it properly pled that the settlement amount was reasonable and negotiated in good faith. However, a closer look at the allegations on which Savoy relies reveals that most, if not all, of them are conclusory in nature. The amended counterclaim alleges that after National Trust denied coverage and failed to defend and indemnify Jorda in the Underlying Action, "Jorda and Savoy engaged in settlement discussions, and ultimately agreed to resolve their dispute." (Am. Countercl. ¶¶ 20–21, ECF No. 22.) "[B]ecause it had by then become apparent that Jorda acted negligently but not with an intent to harm Savoy," presumably as a result of the parties' discovery efforts, "Jorda agreed to accept liability for damages arising out of its negligence, and Savoy acknowledged that the facts supported such a finding and did not support a finding of intentional misconduct by Jorda." (*Id.* ¶ 22.) Jorda thus "consented to a judgment against it in the amount of $17,583,540.10[,]" which "amount was determined by Jorda and Savoy to be a reasonable and fair settlement value arrived at through, *inter alia*, compromise and due consideration for the expenses and substantial risks involved with proceeding to trial in the matter." (*Id.* ¶ 24.) Per Savoy "[t]he settlement was objectively reasonable and made in good faith." (*Id.* ¶ 38.) These allegations are all conclusory in nature because all they do is provide blanket assertions that the settlement was reasonable and made in good faith, without supplying any factual support as to *why* either of these requirements is met.

The closest Savoy comes to providing the requisite factual support for the reasonableness and good faith requirements is by way of the "Undisputed Facts" attached as an exhibit to the settlement agreement itself, which Savoy has incorporated into its amended counterclaim. (*See id.* ¶ 24.) Unfortunately, however, these undisputed facts do little more than provide background information as to the origins and eventual culmination of Jorda and Savoy's contractual dispute. (*See generally* Settlement Agree., ECF No. 1-3.) Specifically, the undisputed facts consist of seven paragraphs that outline who Jorda and Savoy are; the nature and scope of Jorda's original contract to oversee the repairs of the HVAC system at one of the Savoy Hotel's buildings; how Jorda negligently performed its duties under the contract; and how that

negligence damaged the building, to the point where it "has been closed ever since pending the City of Miami Beach allowing work to proceed in that building." (*Id.* ¶ 6.) While these facts may support Jorda's culpability, and therefore, explain its reasons for wanting to enter into a settlement agreement with Savoy in the first place, they say little as to why the $17,583,540.10 agreement that was ultimately concluded was either reasonable or negotiated in good faith.

The exhibit to the settlement agreement also includes a second, separate section on "Savoy's Damages." While it is unclear to the Court whether Jorda and Savoy intended that this section of the exhibit also reflect undisputed facts—seeing as it is specifically separated from the section which is labeled "Undisputed Facts"—it too fails to provide adequate support as to the good faith and reasonableness of the final agreement reached. This is because this second section does nothing more than provide a very rudimentary breakdown of the $17,583,540.10 figure into three categories of damages, which are themselves not developed any further. By way of example, the vast majority of the monetary amount, $15,200,000 to be exact, is attributed to "[l]oss of use damages related exclusively to the West Wing of the Arlington Building[,]" without any information as to how that fifteen million dollar loss of use figure was produced. (*See id.* 3–4.)

To be sure, the settlement agreement also makes statements to the effect that "[i]t is the intention of the [p]arties to th[e] agreement to have a valid, binding agreement that is not fraudulent or collusive in any way, consistent with the principles set forth in *Coblentz v. American Surety Company of New York,* 416 F.2d 1059 (5th Cir. 1969)[.]" (Settlement Agree. ¶ 10, ECF No. 1-3.) However, statements like these are no less conclusory than those included in the amended counterclaim just because they are part of the settlement agreement instead.

As the Eleventh Circuit has explained:

> In determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also certain subjective factors . . . including the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer. . . . A determination of reasonableness of the settlement agreement is made in view of the degree of probability of the insured's success and the size of the possible recovery.

*Jimenez v. Gov't Emples. Ins. Co.*, 651 F. App'x 850, 853 (11th Cir. 2016) (cleaned up) (quoting *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008)). Here, there is nothing in the allegations of the

amended counterclaim from which the Court can objectively measure the reasonableness of the $17,583,540.10 figure on which Jorda and Savoy settled. There are no allegations as to what amount Savoy sought in the Underlying Action as damages, what those damages were based on, or even what Jorda's initial settlement offers were.

Assuming that Savoy's damages were mostly based on its loss of use of the building that was impacted by Jorda's negligent work, as the exhibit to the settlement agreement suggests, there again is nothing from which the Court can ascertain how the parties arrived at the $15,200,000 figure reflected in that exhibit. By way of example, the exhibit fails to include what period of loss of use that number is intended to cover, how much Savoy had profited from the damaged building in the past for similar periods of time, or, for that matter, who calculated the losses, including whether an expert was involved. Moreover, the Court finds it notable that both Savoy's counterclaim and amended counterclaim in the Underlying Action were instituted against various other defendants, which also allegedly played significant roles in the damages caused to the Savoy building at issue. But, despite this, neither Savoy's amended counterclaim here nor the settlement agreement make any effort to explain whether, and if so why, Jorda assumed responsibility for *all* the damages suffered to the building as part of the settlement agreement.

Moreover, with respect to the good faith requirement specifically, "Florida law provides that bad faith 'may be established by evidence of a false claim, or collusion in which the plaintiffs agree to share the recovery with the insured, or an absence of any effort to minimize liability.'" *Jimenez*, 651 F. App'x at 854 (quoting *Bond Safeguard Ins. Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 6:13-cv-561-Orl-37DAB, 2014 U.S. Dist. LEXIS 148953, 2014 WL 5325728, at *9 (M.D. Fla. Oct. 20, 2014)). Thus, in line with this, "[c]ourts have found bad faith where, for example, the amount of the settlement was not subject to good faith negotiations." *Id.* As with the reasonableness prong, the amended counterclaim is devoid of any factual allegations from which the Court can infer that the settlement agreement was the result of a serious, arms-length transaction between Jorda and Savoy. Indeed, other than stating that the settlement value was "arrived at through, *inter alia*, compromise and due consideration for the expenses and substantial risks involved with proceeding to trial[,]" the amended counterclaim does not include any allegations addressing what negotiations Jorda and Savoy actually underwent to reach the settlement agreement. There are no allegations, for example, as to how long the parties negotiated for, whether Jorda was able to bring Savoy down from its initial demands, or whether it even attempted to counter them at all. *See Sidman v. Travelers Cas. & Sur.*, 841 F.3d 1197, 1205 (11th Cir. 2016)

(affirming district court's determination that settlement agreement was negotiated in bad faith "[b]ecause substantial evidence support[ed] the district court's finding that [the insured] agreed to settle the claim for any amount in exchange for [the claimants'] agreement not to execute the judgment against it").

As touched on above, the good faith and reasonableness requirements are two separate requirements to the enforcement of *Coblentz* agreements like that at issue here, meaning that "[i]f an insurer can prove that *either* element is unsatisfied, the consent judgment cannot be enforced." *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 534 F. App'x 926, 928 (11th Cir. 2013) (citing *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984)). Moreover, and importantly, a *Coblentz* plaintiff "assume[s] the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier." *Chomat v. N. Ins. Co.*, 919 So. 2d 535, 537 (Fla. 3d DCA 2006) (quoting *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984)). And while, obviously, on a motion to dismiss Savoy need not produce the evidence itself, it still bears the burden of articulating "enough facts to" suggest "that [it] is plausible," rather than merely possible, that the agreement here was both reasonable and entered into in good faith. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In short, Savoy's amended counterclaim does not allege sufficient facts to support either good faith or reasonableness.

### 4. Conclusion

For the reasons stated above, the Court **grants** National Trust's motion to dismiss Savoy's amended counterclaim (**Mot., ECF Nos. 26**), thus dismissing the amended counterclaim **with prejudice**.

Additionally, the Court dismisses Savoy's amended counterclaim **without leave to amend**. Savoy has not requested leave to amend; nor has it indicated any inclination to do so. *See Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."); *compare with Carter v. HSBC Mortg. Services, Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) ("A pro se plaintiff, however, *must* be given at least one chance to amend the complaint before the district court dismisses the action

with prejudice, at least where a more carefully drafted complaint might state a claim.") (cleaned up) (emphasis in original).

Finally, this case will stay **open** because National Trust's claims against Savoy remain pending.

**Done and ordered** at Miami, Florida on November 20, 2023.

Robert N. Scola, Jr.
United States District Judge